IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| DAVID H. JACOB, | |
| Plaintiff, | 4:20CV3107 |
| vs. | |
| ROSALYN COTTON, Chairperson, Nebraska Board of Parole; MARK T. LANGAN, Member, Nebraska Board of Parole; ROBERT TWISS, Member, Nebraska Board of Parole; LAYNE GISSLER, Member, Nebraska Board of Parole; and VIRGIL J. PATLAN, Member, Nebraska Board of Parole; | MEMORANDUM AND ORDER |
| Defendants. | |

This matter is before the court on Defendants' Motion for Summary Judgment. (Filing 61). Also pending are Plaintiff's Motion to Alter or Amend (Filing 69), Defendants' Motion to Strike Index (Filing 70), Plaintiff's Objection to the Motion to Strike (Filing 72), and Plaintiff's own Motion to Strike (Filing 73). For the reasons that follow, the Motion for Summary Judgment is granted, the Motion to Amend is denied, the Motions to Strike are denied as moot, and Plaintiff's Objection is overruled.

## I. BACKGROUND RELEVANT TO ALL PENDING MOTIONS

Plaintiff David H. Jacob ("Plaintiff"), an inmate at the Nebraska State Penitentiary, filed this 42 U.S.C. § 1983 action against Rosalyn Cotton, Layne Gissler, Virgil Patlan, Robert Twiss, Mark Langan, and Habib Olomi, all members of the Nebraska Board of Parole ("Board"). Plaintiff is currently serving a sentence for convictions on three counts of second-degree murder and two counts of use of a firearm to commit a felony.

Plaintiff became eligible for parole in January 2015 and had an offender review interview with the Board in September 2019. After the review, the Board deferred Plaintiff's parole hearing and sent him an Offender Board Review Notice that identified Plaintiff's "prior criminal record" as one reason for the deferral. Plaintiff seeks a declaratory judgment finding that the Board's decision violated Plaintiff's due process rights. (Filing 1 at CM/ECF p. 6.) Plaintiff also seeks prospective injunctive relief prohibiting Defendants from finding Plaintiff had a "prior criminal record" and an order requiring the Board to implement a variety of procedural changes to the Board review process. (*Id*. at CM/ECF p. 7.)

## II. MOTION TO ALTER OR AMEND (Filing 69)

### A. Background

The court entered its Progression Order in this case on June 1, 2021, requiring, among other deadlines, that all motions to amend pleadings be filed on or before August 10, 2021. (Filing 29 at CM/ECF p. 1.) On August 13, 2021, Plaintiff filed a Motion to Extend Deadline for Filing Amended Pleadings from August 10, 2021, until the end of the discovery process (September 21, 2021) because the incomplete discovery responses he received as of that time "suggested a potentially further constitutional violation in this case" occurring in the Board's November 5, 2020, review of Plaintiff's case. (Filing 40.) On August 17, 2021, the court denied Plaintiff's Motion without prejudice as premature because of Plaintiff's ongoing discovery discussions with Defendants' counsel, a change in Defendants' counsel of record, and because Plaintiff had until September 21, 2021, to compel additional discovery if necessary. (Filing 42.)

Instead of filing another motion for leave to file an amended complaint at the close of discovery, Plaintiff did not file another such motion until December 2, 2021. (Filing 57.) In his Motion, Plaintiff sought to add two claims related to the Board's 2020 and 2021 offender-review deferrals and one Defendant who was involved in these decisions.

The court concluded Plaintiff failed to show good cause to file an amended complaint outside the court's scheduling order under Fed. R. Civ. P. 16(b)(4). (Filing 64 at CM/ECF p. 4-6.) The court reasoned that Plaintiff failed to explain why he waited until December 2, 2021, to file a motion to amend the pleadings when discovery closed on September 21, 2021, even after the court advised Plaintiff that his prior motion to amend was premature until the close of discovery. Accordingly, Plaintiff had not shown good cause to amend the pleadings outside of time. (*Id.* at CM/ECF pp. 4-5.)

Moreover, even if Plaintiff had shown "good cause" to modify the scheduling order to allow him to amend his Complaint, the court would still have denied Plaintiff's motion because of undue prejudice to the Defendants. Discovery was closed on September 21, 2021, Defendants had filed a motion for summary judgment, and the final pretrial conference was only months away. Thus, the court explained, if two additional claims and a Defendant were added, Defendants would need to repeat discovery on the additional claims, perform full discovery on an additional Defendant, and file a new motion for summary judgment. (*Id.* at CM/ECF pp. 5-6.)

Plaintiff now argues the court should alter or amend its Order (Filing 64) denying his Motion to Amend because the court "did not specifically find that the Plaintiff had NOT shown good cause." (Filing 69 at CM/ECF p. 1.) He also argues Defendants would no longer be prejudiced because Plaintiff has filed an additional lawsuit under § 1983 against Defendants, asserting the claims that he would have included in his first amended complaint in this case. Thus, according to Plaintiff, Defendants will have to complete additional discovery anyway.

**B. Analysis**

Rule 59(e) motions serve the limited function of correcting manifest errors of law or fact or to present newly discovered evidence. *United States v. Metro. St. Louis Sewer Dist.*, 440 F.3d 930, 933 (8th Cir. 2006). Such motions cannot be used to introduce new evidence, tender new legal theories, or raise arguments which could have been offered or raised prior to entry of judgment. *Id.*

3

Plaintiff has not identified any newly discovered evidence and fails to identify any manifest error of law or fact in the court's previous Order at Filing 64. Despite Plaintiff's statement to the contrary, the court did specifically find that he had not shown good cause to file a motion to amend out of time. (Filing 64 at CM/ECF pp. 4-5.) Moreover, for the reasons described in the court's previous Order, Defendants would still be prejudiced in this case if Plaintiff were permitted to amend his Complaint. Accordingly, Plaintiff has failed to show a manifest error of law and his motion under Rule 59(e) (filing 69) is denied.

### III. MOTIONS TO STRIKE AND OBJECTION TO MOTION TO STRIKE

The parties each filed Motions to Strike portions of the opposing party's evidence supporting their positions on Defendants' Motion for Summary Judgment. Thus, the court first considers the Motions to Strike to determine which evidence it will consider relative to Defendants' Motion for Summary Judgment.

**A. Defendants' Motion to Strike (Filing 70) and Plaintiff's Objection (Filing 72)**

Defendants move to strike portions of Plaintiff's Declaration, (filing 68 at CM/ECF pp. 9-12), that Plaintiff included in his evidence in opposition to summary judgment. Specifically, Defendant argues paragraphs 15-21, 23, and 24 of Plaintiff's Declaration should be stricken because they assert conclusions of law or conclusory findings of fact that are not otherwise supported by evidence in the record. Plaintiff objects to the Motion to Strike, arguing Defendants are attempting to take advantage of Plaintiff's limited knowledge of court procedures and the law.

The court concludes it need not strike the enumerated portions of Plaintiff's Declaration, but it will disregard Plaintiff's assertions that state legal conclusions. "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Courts must disregard portions of affidavits made without personal knowledge or that attempt to assert legal conclusions as fact. *Howard v. Columbia Pub. School Dist.*, 363 F.3d 797, 801 (8th Cir. 2004). Paragraphs 15-21, 23, and 24

of Plaintiff's Declaration do not state facts; they assert purely legal arguments. Thus, although the court will not strike these paragraphs, they will not be considered as admissible facts in opposition to summary judgment.

### B. Plaintiff's Motion to Strike (Filing 73)

Plaintiff moves to strike paragraphs 5, 9, 10, and 23 from Layne Gissler's Declaration (filing 62-7) and paragraphs 5, 12, 13, and 23 from Robert Twiss' Declaration (filing 62-8). Unlike paragraphs 15-21, 23, and 24 of Plaintiff's Declaration, these paragraphs are not purely legal arguments. These statements purport to be based on Gissler's and Twiss' personal knowledge or understanding about the actions they took individually, or the actions of the Board. Accordingly, Plaintiff's Motion to Strike is denied.

### IV. MOTION FOR SUMMARY JUDGMENT (Filing 61)

### A. Summary Judgment Procedure

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

This court's local rules further specify that "[t]he moving party must include in the brief in support of the summary judgment motion a separate statement of material facts," which "should consist of <u>short</u> numbered paragraphs, each containing pinpoint references to affidavits, pleadings, discovery responses,

5

deposition testimony (by page and line), or other materials that support the material facts stated in the paragraph." NECivR 56.1(a) (underlining in original). "The statement must not contain legal conclusions." *Id*.

The opposing party's brief must include "a concise response to the moving party's statement of material facts." NECivR 56.1(b)(1). "Each material fact in the response must be set forth in a separate numbered paragraph, must include pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials upon which the opposing party relies, and, if applicable, must state the number of the paragraph in the movant's statement of material facts that is disputed." *Id*.

A party's failure to comply with these requirements can have serious consequences: The moving party's "[f]ailure to submit a statement of facts" or "[f]ailure to provide citations to the exact locations in the record supporting the factual allegations may be grounds to deny the motion" for summary judgment. NECivR 56.1(a) (underlining omitted). On the other hand, "[p]roperly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response." NECivR 56.1(b)(1) (underlining omitted).

In accordance with the court's local rules, Defendants' brief (Filing 63) includes "a separate statement of material facts about which the moving party contends there is no genuine issue to be tried and that entitles the moving party to judgment as a matter of law." NECivR 56.1(a)(1). The material facts below, appearing in numbered paragraphs, are those that have not been properly disputed by Plaintiff pursuant to the court's local rules. Plaintiff did not directly respond to several of Defendants' numbered statements of fact. Accordingly, those facts are considered admitted. *See* NECivR 56.1(b). To the extent admissible, the court has considered Plaintiff's Index in Opposition to Summary Judgment. (Filing 68.) However, as noted above, the court has not considered Plaintiff's legal conclusions and arguments asserted as facts because such statements are not admissible to oppose summary judgment. Although Plaintiff is proceeding pro se, he is bound by and must comply with all local and federal procedural rules. NEGenR 1.3(g).

**B. Relevant Undisputed Material Facts**

1. Plaintiff is, and at all relevant times was, a person in the custody of the Nebraska Department of Correctional Services ("NDCS"). He is, and at all relevant times was, incarcerated at the Nebraska State Penitentiary. (Filing 1 at CM/ECF p. 1; Filing 62-5 at CM/ECF p. 2, ¶ 6.)

2. Cotton is, and at all relevant times was, a member and Chair of the Board. (Filing 1 at CM/ECF p. 1; Filings 22, 23, 24, 25, 26, 27.)

3. Gissler is, and at all relevant times was, a member and Vice Chair of the Board. (Filing 1 at CM/ECF p. 2; Filings 22, 23, 24, 25, 26, 27; Filing 62-7 at CM/ECF pp. 1-2, ¶¶ 3, 6.)

4. Patlan was, at all relevant times, a member of the Board. (Filing 1 at CM/ECF p. 2; Filings 22, 23, 24, 25, 26, 27.)

5. Twiss is, and at all relevant times was, a member of the Board. (Filing 1 at CM/ECF p. 2; Filings 22, 23, 24, 25, 26, 27.)

6. Langan is, and at all relevant times was, a member of the Board. (Filing 1 at CM/ECF p. 2; Filings 22, 23, 24, 25, 26, 27.)

7. The parties agree the court has jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's Complaint alleges a violation of his 14th Amendment right to due process. (Filing 1 at CM/ECF p. 2.)

8. The parties agree this court is the proper venue for this action pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claim occurred in the District of Nebraska. (Filing 1 at CM/ECF pp. 1-5.)

9. Plaintiff is currently serving an indeterminate sentence for three counts of second-degree murder and two counts of use of a firearm to commit a felony (collectively referred to in this Memorandum and Order as the "Criminal Convictions"). (Filing 1 at CM/ECF p. 2; Filing 62-5 at CM/ECF p. 2, ¶ 7; Filing 62-6.)

10. Plaintiff's inmate file does not contain any criminal convictions other than the Criminal Convictions described above. (*See* Filing 62-5 at CM/ECF p. 2, ¶ 8; Filing 62-6.)

11. Plaintiff became eligible for parole in January 2015. (Filing 62-3 at CM/ECF p. 2, ¶ 7; Filing 1 at CM/ECF p. 2.)

12. On September 5, 2019, Plaintiff had an annual "offender review interview" with members of the Board (hereinafter "2019 Offender Review Interview"). (Filing 1 at CM/ECF p. 2; Filing 22, 23, 24, 25, 26, 27; Filing 62-3 at CM/ECF p. 2, ¶¶ 8-11; Filing 62-7 at CM/ECF p. 2, ¶ 8; Filing 62-8 at CM/ECF p. 2, ¶ 8.)

13. An offender review interview is a review before at least two members of the Board to determine whether an inmate should be scheduled for a parole hearing. (Filing 62-3 at CM/ECF p. 2, ¶ 9; Filing 62-7 at CM/ECF p. 2, ¶ 9; Filing 62-8 at CM/ECF p. 3, ¶ 12; Filing 62-2.)

14. Gissler and Twiss were present for Plaintiff's 2019 Offender Review Interview. (Filing 62-3 at CM/ECF p. 2, ¶¶ 10-11; Filing 62-7 at CM/ECF p. 2, ¶ 8; Filing 62-8 at CM/ECF p. 2, ¶¶ 8-9; Filing 62-10.)

15. Cotton, Patlan, and Langan were not present for Plaintiff's 2019 Offender Review Interview. (Filing 62-3 at CM/ECF p. 2, ¶ 12; Filing 62-7 at CM/ECF p. 3, ¶ 12; Filing 62-8 at CM/ECF p. 2, ¶ 10.)

16. Cotton, Patlan, and Langan did not assist with or participate in Plaintiff's 2019 Offender Review Interview. (Filing 62-3 at CM/ECF p. 3, ¶ 15; Filing 62-7 at CM/ECF p. 3, ¶¶ 12, 17; Filing 62-8 at CM/ECF pp. 2-3, ¶¶ 10, 17.)

17. On the date of the 2019 Offender Review Interview, NDCS and the Board were not under a correctional system overcrowding emergency, as stated in Neb. Rev. Stat. § 83-962. (Filing 62-7 at CM/ECF p. 2, ¶ 7; Filing 62-8 at CM/ECF p. 2, ¶ 7.)

18. During the 2019 Offender Review Interview, Plaintiff had the opportunity to discuss matters relevant to the Board's decision, including his underlying criminal convictions. (Filing 62-7 at CM/ECF p. 3, ¶ 18; Filing 62-8 at CM/ECF p. 3, ¶ 18.) Plaintiff asserted that only his three convictions for second degree murder were addressed at the 2019 Offender Review Interview. (Filing 62-10, Interrogs. 2-3, at CM/ECF p. 1-2.)

19. After the 2019 Offender Review Interview, Gissler and Twiss deferred Plaintiff's request for parole until September 2020. (*See* Filing 62-7 at CM/ECF p. 3, ¶ 19; Filing 62-8, at CM/ECF p. 3, ¶ 19.) Gissler and Twiss both reasoned that release on parole would undermine the serious nature of the Criminal Convictions underlying Plaintiff's current sentence. (Filing 62-7 at CM/ECF p. 3-4, ¶ 20; Filing 62-8, at CM/ECF p. 4, ¶ 20.)

20. Plaintiff received an "Offender Board Review Notice," dated September 5, 2019, informing him of the deferral (the "2019 OBR Notice"). (Filing 1 at CM/ECF p. 3; Filing 62-4.)

21. The 2019 OBR Notice states the following two reasons as the basis for Plaintiff's deferral:

> The nature/circumstances of your offense(s) indicates that an early release would depreciate from the seriousness of your crime and promote disrespect for the law.
>
> Due to your prior criminal record.

(Filing 1 at CM/ECF p. 3; Filing 62-4.)

**C. Analysis**

### 1. Summary Judgment Standard of Review

Summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is not the court's function to weigh evidence

9

in the summary judgment record to determine the truth of any factual issue. *Schilf v. Eli Lilly & Co.*, 687 F.3d 947, 949 (8th Cir. 2012). In passing upon a motion for summary judgment, the district court must view the facts in the light most favorable to the party opposing the motion. *Dancy v. Hyster Co.*, 127 F.3d 649, 652-53 (8th Cir. 1997).

In order to withstand a motion for summary judgment, the nonmoving party must substantiate allegations with "'sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy.'" *Moody v. St. Charles Cnty.*, 23 F.3d 1410, 1412 (8th Cir. 1994) (quoting *Gregory v. City of Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992)). "A mere scintilla of evidence is insufficient to avoid summary judgment." *Id*. Essentially, the test is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

A party opposing summary judgment "may not rest upon the mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial, and must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Ingrassia v. Schafer*, 825 F.3d 891, 896 (8th Cir. 2016) (quoting *Anderson*, 477 U.S. at 256-57 (quotations omitted); *see also Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-60 (1970).

### 2. Due Process During the 2019 Offender Review Interview

The court first considers Plaintiff's argument that the 2019 Offender Review Interview failed to comply with the procedural protections mandated by *Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1 (1979). While there is no federal constitutional right to be paroled, *id*. at 7, state laws "may create liberty interests in parole release that are entitled to protection under the Due Process Clause." *Bd. of Pardons v. Allen*, 482 U.S. 369, 371 (1987). This court has noted "that Nebraska law creates a liberty interest in parole worthy of minimal protection under the Due Process Clause." *Matthies v. Houston*, No. 4:12CV3069, 2013 WL 527771, at *2 (D. Neb. Feb. 11, 2013) (citing *Greenholtz*, 442 U.S. at 12). When

10

state law creates a liberty interest, "the Due Process Clause requires fair procedures for its vindication—and federal courts will review the application of those constitutionally required procedures." *Swarthout v. Cooke*, 562 U.S. 216, 220 (2011).

Because Plaintiff's argument relies heavily on the *Greenholtz* decision, a review of that case is helpful. In *Greenholtz*, the Supreme Court had to decide whether the Due Process Clause applied to Nebraska's procedures for discretionary parole, and, if so, whether such procedures met constitutional requirements. 442 U.S. at 3. In relevant part, Nebraska's procedures required that prisoners receive an informal hearing and parole eligibility would be determined based on the inmate's records and any statements or letters presented by the inmate, and a short statement describing why parole was denied. *Id*. at 6. The Supreme Court concluded that a prisoner subject to Nebraska's parole statute received adequate process when he was allowed an opportunity to be heard and was provided a statement of reasons why parole was denied. *Id*. at 16. The Court held that the United States Constitution "does not require more." *Id*.

The undisputed facts show Plaintiff's 2019 Offender Review Interview complied with the due process requirements described in *Greenholtz*. First, the evidence establishes the Board gave Plaintiff the opportunity to be heard on his Criminal Convictions during the 2019 Offender Review Interview. (Filing 62-7 at CM/ECF p. 3; Filing 62-8 at CM/ECF p. 3; Filing 62-10, Interrogs. 2-3, at CM/ECF pp. 1-2.) Thus, he was given an opportunity to present evidence on his own behalf and to ensure the records considered related to his case. Second, Gissler and Twiss confirmed they based their decision to defer parole on Plaintiff's Criminal Convictions and indicated this reasoning with the reference to Plaintiff's "prior criminal record" in the OBR Notice. (Filing 62-7 at CM/ECF p. 4; Filing 62-8 at CM/ECF p. 4.) Thus, the OBR Notice provided Plaintiff a written statement of reasons as to why his parole hearing was deferred.

Additionally, and particularly relevant to this case, the Supreme Court noted that when "the Board defers parole after the initial review hearing, it does so because

11

examination of the inmate's file and the personal interview satisfies it that the inmate is not yet ready for conditional release." *Greenholtz*, 442 U.S. at 14-15. Thus, to comply with due process at the Board's initial interview hearing, an inmate must be permitted "to appear before the Board and present letters and statements on his own behalf." *Id*. at 15. The inmate thus has an opportunity "to insure that the records before the Board are in fact the records relating to his case" and "to present any special considerations demonstrating why he is an appropriate candidate for parole." *Id*.

The undisputed evidence shows the Board provided Plaintiff an opportunity to be heard and ensure the record considered related to his case. During the 2019 Offender Review Interview, there is no dispute that Plaintiff had the opportunity to discuss matters relevant to the Board's decision, including his underlying criminal convictions. (Filing 62-7 at CM/ECF p. 3; Filing 62-8 at CM/ECF p. 3.) Plaintiff's answers to discovery show that he was given an opportunity to address the criminal convictions at the 2019 Offender Review Interview. (*See* Filing 62-10, Interrogs. 2-3, at CM/ECF p. 1-2.) In sum, Plaintiff was given the opportunity to appear and to ensure the records considered related to his case. Therefore, the 2019 Offender Review Interview met the due process requirements articulated in *Greenholtz*.

Plaintiff seeks to avoid this result by arguing that Nebraska's procedure no longer complies with the requirements of *Greenholtz*. Plaintiff implies that Nebraska procedure is constitutionally deficient because it does not provide legal means to challenge the Board's factual findings. (Filing 67 at CM/ECF p. 4.) However, the *Greenholtz* decision did not mandate any sort of appellate review, nor did it condition due process on the availability of review. *See Greenholtz*, 442 U.S. at 16; *see also Jones v. Barnes*, 463 U.S. 745, 751 (1983) (noting "[t]here is, of course, no constitutional right to an appeal.").

Plaintiff also argues that the Board's deferral at his 2019 Offender Review Interview required a majority vote by the Board. Section 83-1,111(2) requires that the Board render its "decision" on the offender's release on parole by a majority vote. Neb. Rev. Stat. § 83-1,111(2). Plaintiff argues that because only Gissler and

Twiss determined his parole should be deferred, the Board failed to make a decision by a majority vote.

As used in § 83-1,111(2), the word "decision" is a term of art. As the Nebraska Supreme Court explained, "[w]hen the board 'defers the case for later reconsideration,' it delays making a determination regarding parole pending further consideration, and the board may order such reconsideration at any time." *Van Ackeren v. Nebraska Bd. of Parole*, 558 N.W.2d 48, 52 (Neb. 1997). Thus, when the Board defers parole, it delays making its decision under § 83-1,111(2). Thus, a majority vote of the Board is not required, though the offender is entitled to "a parole review at least once a year until a release date is fixed" under § 83-1,111(4). Because the Board deferred Plaintiff's parole decision, a majority vote was not required.

In sum, there is no evidence that creates a triable issue as to whether the Board failed to comply with due process under the guidance in *Greenholtz*. Plaintiff was provided an opportunity to appear and review the record considered by the Board. Under *Greenholtz*, the United States Constitution "does not require more." 442 U.S. at 16. Accordingly, the 2019 Offender Review Interview complied with due process.

### 3. "Prior Criminal Record"

One of the listed reasons the Board deferred his parole was "[d]ue to [Plaintiff's] prior criminal record." (Filing 62-4.) Because Plaintiff did not have convictions prior to his Criminal Convictions, Plaintiff argues he could not have a "prior criminal record." Thus, he argues the Board violated his 14th Amendment right to due process when it deferred parole on the basis of Plaintiff's "prior criminal record."

Under Neb. Rev. Stat. § 83-1,114, the Board is required to order an eligible parolee's release unless the Board finds parole should be deferred because:

> (a) There is a substantial risk that he or she will not conform to the conditions of parole;

13

(b) His or her release would depreciate the seriousness of his or her crime or promote disrespect for law;

(c) His or her release would have a substantially adverse effect on institutional discipline; or

(d) His or her continued correctional treatment, medical care, or vocational or other training in the facility will substantially enhance his or her capacity to lead a law-abiding life when released at a later date.

Neb. Rev. Stat. § 83-1,114(1). In making this determination, the Board must consider its own decision guidelines and several factors, including "[t]he offender's prior criminal record, including the nature and circumstances, dates, and frequency of previous offenses." Neb. Rev. Stat. § 83-1,114(2)(j).

The phrase "prior criminal record" is not defined in the Nebraska Treatment and Corrections Act, Neb. Rev. Stat. § 83-170 *et seq.* ("NTCA"), nor has it been interpreted by Nebraska courts. Specific to this case, Nebraska law has not specifically declared whether "prior criminal record" as used in § 83-1,114(2)(j) includes the offenses for which the offender is currently incarcerated. Plaintiff argues that the word "prior" means the Board may only consider offenses other than those for which he is currently incarcerated.

Plaintiff's interpretation is contrary to the Supreme Court's direction in *Greenholtz*. In describing the Board's procedures, the Supreme Court explained that when the Board defers parole after an initial review hearing, "it does so because examination of the inmate's file and the personal interview satisfies it that the inmate is not yet ready for conditional release." *Greenholtz*, 442 U.S. at 14–15. "The parole determination therefore must include consideration of what the entire record shows up to the time of the sentence, *including the gravity of the offense in the particular case*." *Id.* at 15 (emphasis added). Thus, the Supreme Court's interpretation of Nebraska procedures contemplated that the initial Board review interview would consider an offender's entire record, including the offense for which the offender was incarcerated.

The phrase "prior criminal record," as used by the Board in the 2019 OBR Notice review, is consistent with its use in the NTCA and the Supreme Court's guidance in *Greenholtz*. The Board was required to examine all convictions prior to the date of the parole determination, including the underlying Criminal Convictions. Accordingly, there was no constitutional violation to defer Plaintiff's parole on the basis of his prior criminal record.

IT IS THEREFORE ORDERED that:

1. Defendants' Motion for Summary Judgment (Filing 61) is granted;

2. Plaintiff's Motion to Alter or Amend (Filing 69) is denied;

3. Defendants' Motion to Strike Index (Filing 70) is denied as moot;

4. Plaintiff's Objection to the Motion to Strike (Filing 72) is overruled;

5. Plaintiff's own Motion to Strike (Filing 73) is denied; and

6. A separate judgment will be entered.

Dated this 10th day of June, 2022.

BY THE COURT:

*Richard G. Kopf*

Richard G. Kopf
Senior United States District Judge